IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BARRY MORRIS, #N42509,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 24-cv-01649-SMY |
| | ) |
| **JOHN BARWICK,** | ) |
| **DR. PERCY MYERS, and** | ) |
| **ILLINOIS DEPARTMENT OF** | ) |
| **CORRECTIONS,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Barry Morris filed a Complaint pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (Rehab Act) on August 5, 2024.[1] He claims he was denied necessary medical care and reasonable accommodations for chronic back pain at Pinckneyville Correctional Center, and seeks money damages and injunctive relief.

The Complaint (Doc. 11) is subject to review under 28 U.S.C. § 1915A, which requires dismissal of any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915A. The Court will also consider Plaintiff's motion for a temporary restraining order and/or preliminary injunction filed on August 7, 2024. (Doc. 12).

---

[1] This is 1 of 3 cases opened upon receipt of a motion for temporary restraining order without a complaint from the plaintiff. *See also Morris v. Borwick, et al.*, Case No. 24-cv-01470-MAB (S.D. Ill. filed June 10, 2024); *Morris v. Barwick, et al.*, Case No. 24-cv-01839-SMY (S.D. Ill. filed Aug. 5, 2024). Plaintiff notified the Court of his intention to proceed with his claims in this case on July 12, 2024 (Doc. 8), and he filed a Complaint (Doc. 11) on August 5, 2024. Meanwhile, he voluntarily dismissed Case No. 24-01470-MAB on July 15, 2024, and the Court administratively closed Case No. 24-cv-01839-SMY as duplicative of the others on August 6, 2024. The Complaint at Doc. 11 is now subject to screening under 28 U.S.C. § 1915A.

1

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 11, pp. 7-16): Plaintiff is an inmate in the custody of the Illinois Department of Corrections (IDOC) and is currently incarcerated at Pinckneyville Correctional Center (Pinckneyville). He suffers from chronic back and leg pain resulting from spinal disc herniation and lumbar spinal stenosis that was diagnosed in 2014. *Id*. at 7. He is also diagnosed with an enlarged prostate. *Id*. at 8.

Due to his health conditions, Plaintiff was given permission to use a single-man cell, double mattress, crutches, wheelchair, ADA showers, and ADA van with a wheelchair at prior facilities. *Id*. at 7-8. He was sent to an orthopedic surgeon for treatment of his chronic lower back problems and associated pain. Plaintiff was prescribed pain medication, physical therapy, and steroid injections. He was also considered for back surgery. *Id*. at 8-9.

Plaintiff involuntarily transferred to Pinckneyville on February 15, 2024. *Id*. at 9. Dr. Myers met with him the same month, but did not want to hear about Plaintiff's medical needs. The doctor discontinued his medical permits for a single-man cell, double mattress, ADA van with wheelchair, and pain medication (*i.e.*, Tramadol).

Plaintiff was subsequently moved to progressively worse housing located farther away from the health care unit (HCU) and forced to live with cellmates who posed a serious risk of harm to his health and safety. He was denied a wheelchair for traveling long distances inside the facility, and was denied access to an ADA van with a wheelchair for medical and court writs outside of the facility. Plaintiff almost fell from the prison's non-ADA van on April 23, 2024, and did fall from it and further injured his back on June 12, 2024. *Id*. The denial of pain medication caused additional unnecessary pain and also exacerbated his hypertension. *Id*. at 10.

Plaintiff notified IDOC of his need for medical care and reasonable accommodations in letters dated March 21, 2024 and April 3, 2024.  He also directed grievances to IDOC.  *Id*. at 14.  Plaintiff indicated that he required medical care, pain medication, a double mattress, a single-man cell, crutches, a wheelchair, an ADA shower with shower seat, and an ADA van with wheelchair.  *Id*.  IDOC denied or disregarded his requests.  *Id*. at 14-15.

Plaintiff sent letters to complain about these issues to Warden Barwick on April 18, 2024, May 13, 2024, June 5, 2024, and June 18, 2024.  *Id*. at 12.  He directed several emergency grievances to the warden, who deemed them emergencies on or around April 29, 2024 and June 13, 2024.  However, the warden affirmed the decisions of grievance officials to deny Plaintiff pain medication, medical care, and reasonable accommodations.  *Id*. at 12-13.

After filing a lawsuit to address these issues, Plaintiff met with Dr. Myers again on June 27, 2024.  *Id*. at 11.  For the first time, the doctor expressed interest in his serious health conditions.  However, when Plaintiff explained that his past treatment with steroid injections and physical therapy were ineffective, the doctor ordered another round of steroid injections for his back pain and denied his request for a surgical consultation.  Later the same night, Plaintiff received a copy of the doctor's waiver of service of summons for the lawsuit Plaintiff filed against the doctor about the same issues.  *Id*.

Plaintiff seeks the following permanent injunctive relief in his Complaint, along with monetary relief: (1) an ADA van/vehicle with a wheelchair; (2) a wheelchair for long distance travel inside the prison; (3) Tramadol; (4) single-man cell status; (5) ADA shower access; (6) double mattress permit; (7) referral to a neurosurgeon to discuss back surgery; (8) removal of Dr. Myers as Plaintiff's primary care physician; and (9) assignment of a new primary care provider (P.A. Ashenti Desor).  *Id*. at 16.

**Discussion**

Based on the allegations, the Court designates the following claims in the *pro se* Complaint (Doc. 11):

**Count 1:** Eighth Amendment claim against Dr. Myers and Warden Barwick for cancelling Plaintiff's longstanding pain medication, wheelchair, ADA van with wheelchair, ADA showers, double mattress, and single-man cell status at Pinckneyville.

**Count 2:** ADA and/or Rehab Act claims against IDOC for failing to accommodate Plaintiff's disabilities by denying him an ADA van with wheelchair, wheelchair, ADA showers, double mattress, and single-man cell status at Pinckneyville.

**Any other claim that is mentioned in the Complaint but not identified above is considered dismissed without prejudice as inadequately pled under *Twombly*.**[2]

**Count 1**

The Eighth Amendment guarantees convicted persons living conditions that provide the "minimal civilized measure of life's necessities," including food, shelter, clothing, and medical care. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (citing *Rhoades v. Chapman*, 452 U.S. 337, 347 (1981)). The intentional or knowing denial of these basic necessities supports an Eighth Amendment claim. *Jaros*, 684 F.3d at 670.

Plaintiff brings this claim against two individual defendants: Dr. Myers and Warden Barwick. He alleges that Dr. Myers cancelled his prescription pain medication and his permits for an ADA van with wheelchair, ADA showers, a wheelchair, a double mattress, and single-man cell status. Warden Barwick deemed Plaintiff's related grievances emergencies, but affirmed the decisions to deny reinstatement or his pain medication and permits. Plaintiff suffered increased pain, hypertension, and other injuries as a result. Because the allegations suggest that Dr. Myers

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

and Warden Barwick acted with deliberate indifference when cancelling Plaintiff's pain medication and medical permits, Count 1 will proceed against them.

## Count 2

To state a colorable claim under the ADA, 42 U.S.C. § 12101 *et seq.*, or Rehab Act, 29 U.S.C. §§ 794–94e, a plaintiff must allege that (1) he is a qualified person with a disability; (2) he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by the entity; and (3) the denial or discrimination was because of his disability. *Jaros*, 684 F.3d at 672. Here, Plaintiff alleges that his chronic back problems and leg pain qualified him as a person with a disability and necessitated use of an ADA van with wheelchair, a wheelchair, ADA showers, and a single-person cell.[3] (Doc. 1). He further alleges that without these accommodations, he was unable to access the prison's health care unit, showers, and other services and activities at the prison. These allegations are sufficient to state a claim in Count 2 against IDOC and Warden Barwick, in an official capacity. *Jaros*, 684 F.3d at 670 (citing 29 U.S.C. § 794(b); 42 U.S.C. § 12131).

## **Motion for TRO and/or Preliminary Injunction (Doc. 12)**

Plaintiff seeks a temporary restraining order and/or preliminary injunction that requires prison officials to reinstate permits for the following: (1) an ADA van/vehicle with a wheelchair; (2) a wheelchair for long distance travel inside the prison; (3) Tramadol; and (4) a single-man cell. The Court may issue a TRO without notice to the party to be enjoined, if a plaintiff sets forth "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard

---

[3] Plaintiff cannot pursue relief under the ADA or Rehab Act for the denial of a double mattress. *See Jaros*, 684 F.3d at 672 (showers and meals considered a "program or activity"); *Boston v. Dart*, 2016 WL 5373083, at *3 (N.D. Ill. 2016) (noting "the ADA was not designed to address thin mattresses and uncomfortable steel prison beds")).

5

in opposition." FED. R. CIV. P. 65(b)(1)(A). A TRO may last no more than 14 days. FED. R. CIV. P. 65(b)(2). Plaintiff has not satisfied this standard. Reinstatement of medication, alone, requires additional information about what medication(s) Plaintiff was taking, which one(s) he now requires, the dose/dosage of each one, the interaction(s) with other medication(s) he now takes, and the harm he will face without the medication. This, in turn, requires a response from the defendants and/or medical providers. Reinstatement of his permits requires additional information about the availability of an ADA van (with wheelchair), a wheelchair, and/or a single-man cell at the prison and the harm Plaintiff will face without each of these things during the pending action. This also requires a response from the defendants. Therefore, Plaintiff's motion for a TRO is **DENIED**.

A preliminary injunction is issued only after the adverse party is given notice and an opportunity to oppose the motion. *See* FED. R. CIV. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). Before the Court can render a decision on this request for relief, Defendants must file a response to the pending motion. Warden Barwick is named in an official capacity and shall be responsible for responding to the pending motion seeking a preliminary injunction within 14 days of accepting service of this lawsuit. The Court will then review the response and determine whether a hearing on this motion is necessary before issuing a decision.

### Motion for Recruitment of Counsel (Doc. 14)

Plaintiff requests counsel to assist him in this matter. When presented with a request for counsel, the Court determines whether an indigent plaintiff has made sufficient efforts to secure counsel on his own and, if so, whether the difficulty of the case, factually and legally, exceeds his capacity as a layperson to present it. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). Plaintiff describes insufficient efforts to find an attorney. He mailed letters to three (3) attorneys before filing suit, and he filed the motion after receiving only one (1) response. Beyond this, Plaintiff has shown that he can represent himself for now. He has extensive experience with litigation, as evidenced by the list of lawsuits he disclosed in his Complaint. He also has "some college" education. His motions and pleadings are organized and coherent. At this stage of litigation, there is little for him to do to move this case forward. The Motion to Appoint Counsel (Doc. 14) is **DENIED without prejudice**.

### Disposition

The Complaint (Doc. 11) survives preliminary review pursuant to 28 U.S.C. § 1915A. **COUNT 1** will proceed against Defendant **PERCY MYERS** and **JOHN BARWICK**, and **COUNT 2** will proceed against Defendant **ILLINOIS DEPARTMENT OF CORRECTIONS** and **JOHN BARWICK (official capacity).**

Plaintiff's Motion for Temporary Restraining Order (Doc. 12) and Motion for Recruitment of Counsel (Doc. 14) are **DENIED**. The Court **DEFERS** a decision on the Motion for a Preliminary Injunction (Doc. 12) until Defendants file a response. Warden Barwick, named in an official capacity, is **ORDERED** to respond to the pending motion seeking a preliminary injunction within 14 days of accepting service of this lawsuit. The Court will then review the response and determine whether a hearing on this motion is necessary before a decision.

The Clerk of Court shall prepare for Defendants **ILLINOIS DEPARTMENT OF CORRECTIONS, PERCY MYERS,** and **JOHN BARWICK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 11), and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **<u>Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.</u>**

**IT IS ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, whether or not his application to proceed *in forma pauperis* is granted. 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing no later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. FED. R. CIV. P. 41(b).

**The Clerk of Court is DIRECTED to ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

**IT IS SO ORDERED**.

**DATED: 8/12/2024**                             s/ *Staci M. Yandle*
                                                 **STACI M. YANDLE**
                                                 **United States District Judge**

**Notice to Plaintiff**

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.