IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BARRY MORRIS, #N42509, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24-cv-1649-RJD |
| v. | ) | |
| | ) | |
| JOHN BARWICK, IDOC, DR. PERCY MYERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendant Barwick's partial Motion for Summary Judgment on the issue of administrative remedy exhaustion. Docs. 64 and 66. Plaintiff filed Responses. Docs. 68 and 69. As explained further, Defendant's Motion is GRANTED.

### Background

Plaintiff filed this case pursuant to 42 USC §1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA") on July 2, 2024.[1] Plaintiff is an inmate of the Illinois Department of Corrections ("IDOC") and currently housed at Pinckneyville Correctional Center ("Pinckneyville"). Following the Court's threshold review conducted pursuant to 28 U.S.C. 1915A, Plaintiff's case proceeds on the following claims:

---

[1] This is one of three cases opened by the Court upon receipt of a motion for temporary restraining order from Plaintiff. *See also Morris v. Barwick, et al.*, Case No. 24-cv-1470-MAB (S.D. Ill. Jun. 10, 2024); *Morris v. Barwick, et al.*, Case No. 24-cv-1839-SMY (S.D. Ill. Aug. 6, 2024). All three motions for temporary restraining order involved the same claims, defendants, and requests for relief. Plaintiff notified the Court of his intention to proceed with the claims in this case on July 12, 2024 and filed a Complaint on August 5, 2024. Docs. 8 and 11. Meanwhile, he voluntarily dismissed case No. 24-cv-1470-MAB on July 15, 2024 and the Court closed case No. 24-cv-1839-SMY as duplicative.

Count 1:        Eighth Amendment claim against Dr. Myers and Warden Barwick for cancelling Plaintiff's longstanding pain medication, a wheelchair, ADA van with wheelchair, ADA showers, double mattress, and single-man cell status at Pinckneyville.

Count 2:        ADA and/or Rehab Act claims against IDOC and Warden Barwick in his official capacity for failing to accommodate Plaintiff's disabilities by denying him a wheelchair, ADA ADA van with wheelchair, ADA showers, and single man cell status at Pinckneyville.

Doc. 17.

Plaintiff alleges that he was diagnosed with spinal disc herniation and lumbar spinal stenosis in 2014; because of these conditions, he has chronic back and leg pain.   Doc. 11, pp. 7-8.   In 2021, a back specialist recommended surgery.   *Id*., p. 8.   He transferred to Pinckneyville from Western Illinois Correctional Center in February 2024; he alleges that "at his previous three facilities," he received Tramadol for his chronic back and left leg pain.   *Id*.   At Pinckneyville, Plaintiff has been treated by Defendant Dr. Percy Myers.   Dr. Myers is an employee of Wexford Health Sources, Inc. (not a defendant), a private company that contracts with IDOC to provide medical care to inmates.

Prior to the Pinckneyville transfer, Plaintiff had a single man cell permit of indefinite duration because he was "up all hours of the night using the toilet" related to his enlarged prostate and because he has crutches which could be used by a cellmate against Plaintiff as a weapon.   *Id*., p. 8.   He lived in the "ADA wing" at Western Illinois Correctional Center.   *Id*.   He also was transported outside of the facility in an ADA van with a wheelchair.   *Id*., p. 7.

When Plaintiff arrived at Pinckneyville, Dr. Myers discontinued the Tramadol prescription. *Id*., p. 9.   Plaintiff's chronic pain has gotten worse; he contends that because of his pain, his blood pressure has increased so significantly that he must take high blood pressure medication.   *Id*.

Page **2** of **10**

Dr. Myers also discontinued Plaintiff's medical permits for the single man cell status, ADA van with wheelchair for transportation, and double mattress.   *Id*.

Plaintiff sent letters to Warden Barwick regarding these issues on April 18, May 13, and June 5, and June 18 2024.   *Id*., p. 12.   Warden Barwick also deemed a "number" of Plaintiff's grievances as emergencies but ultimately "rubber stamped" the denial of Plaintiff's grievances. *Id*., p. 13.   Defendant Barwick moves for summary judgment on the Eighth Amendment claim against him, contending that Plaintiff failed to exhaust his administrative remedies.

### Exhaustion Requirements

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court.   Inmates who intend to file suit are required to follow all steps and instructions in the grievance process before filing with the Court in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident or problem to his or her institutional counselor.   20 ILL. ADMIN. CODE § 504.810(a).   The grievance must contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c).   If more than sixty days has passed since the discovery of the incident or problem, the grievance will still be considered if the inmate can demonstrate good cause for the lapse of time.   *Id*. §504.810(a).

If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.* An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall make a final determination within 6 months of receipt of the appeal. 20 Ill. Admin. Code § 504.850(d) and (e).

An inmate may also request that the prison treat his grievance as an emergency "by forwarding the grievance directly to the Chief Administrative Officer." *Id*. at § 504.840(a). The Chief Administrative Officer decides whether there is "a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and, if so, expedites processing. *Id*. at § 504.840(a)-(b). If the Chief Administrative Officer finds that the grievance does not constitute an emergency, the inmate "shall be notified in writing that he…may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id*. at § 504.840(c).

### Plaintiff's grievance records

Defendant Barwick submitted Plaintiff's grievance records from the ARB as an exhibit to his Motion for Summary Judgment. Doc. 64-1. Those records reflect that Plaintiff submitted an emergency grievance at Pinckneyville on March 7, 2024 that contained the following narrative:

> On Feb. 15, 2024 I was transferred to PNKCC from WICC on a special transfer. PNKCC arrived at WICC in a regular van. WICC administration "KNOWS" that all of my transportation needs

Page **4** of **10**

outside of WICC will be by ADA vehicle. The 4 years and 10 months that I have been at WICC, all of my medical writs were by ADA vehicle. My ADA transportation was authorized by the Director of IDOC, the WICC ADA coordinator Mrs. Kathy Ashcroft and the Warden. See Ex. "A" grievance & ARB Response dated June 7, 2019. The ADA transportation violation will be addressed at my next scheduled Court hearing pending lawsuit against WICC in Sangamon County, Springfield, Illinois Case no. 2021 MR 1372.

On February 17, 2024 I sent a detail[ed] letter to PNKCC ADA coordinator Mrs. Lankford explaining to her about my ADA transportation needs "No reply was given." See Ex. "B" letter to Mrs. Lankford.

On Feb. 23, 2024 around 9:00 a.m. I sat down with Dr. P. Myers in the HCU and I tried to explain to him about my medical problems and I tried to show him my medical documents/permits and he stated, "I do not need to see none of that." During my sit down with Dr. P. Myers I also tried to explain to him about my transportation needs due to my medical conditions and he stated to me that "I do not need a[n] ADA van to transport me any where." He continued by saying "I can travel in a regular van by using a walker." I continued to try to explain to Dr. Myers that the last 7 years I Have always been transported by ADA vehicle. Dr. Myers stated that pNKCC has only two ADA vans and one is down right now and he felt no matter how bad my medical condition is as long as I can walk with a walker I will be ok. He also stated that "If my left leg go out on me the officers will be there to help me up."

I would like to present the Orthopedic doctor's medical recommendation that I should be transported by ADA vehicle. Dated.

See Ex. "C" medical document from the ortho surgeon (Content L sheet).

According to PNKCC & IDOC rules, in PNKCC Individual Orientation Manual dated 2022-2023(b), subpart F: grievance procedures for offenders states in Section 504:850 Appeals (e) The Director shall review the findings and recommendation of the Board make a final determination of the grievance: review ex's "A" and "C". Now what gives Dr. Myers the authority to overrule the Director of IDOC and the orthopedic surgeon recommendations.

Let me present my medical permit from WICC. I also just had

cataract surgery on my left eye on 1-27-24 and there were some
complications due to my astigmatism and my macular degeneration.
I was recommended to see a retina specialist and I was instructed to
wear sun glasses that I was given. See Ex. "E" medical permit from
WICC.

Dr. Myers did not put on my medical permit that I can take my urinal
bottle with me on all of my out of facility writ's med/court.   Review
ex. "E" I have a history of a[n] enlarged prostate and I am taking
t[wo] meds: Proscar and Flomax.

I do not climb stairs, in fact I have not climb stairs in 7 years. I do
not know how this facility PNKCC work but Dr. Myers needs to
state "NO STAIRS" on my permit as well.   When I was at WICC
the law library was on the 2nd floor and they did not have a[n]
elevator and all of my law library activities were held on the first
floor.   The law library supervisor use[d] to bring me my excess
legal box, copies, notary, books, and any documents that I needed to
the first floor. See Ex. "F" WICC law library pass.

Due to the acts listed above if Dr. Myers had [done] a complete and
thorough review of my medical files/charts he would have seen that
I have a few very serious medical procedures that need outside
medical attention and that's why this grievance is marked as an
emergency so there will be no problem on my ADA transportation
needs along with the new revised medical permit I hope to receive.

*Id.*, pp. 53-54. The Chief Administrative Officer determined this grievance constituted an

emergency and that review should be expedited.   The grievance officer recommended that the

grievance be denied and the Chief Administrative Officer concurred with that recommendation on

April 11, 2024.   *Id.*, p. 51.   It is unclear as to whether Defendant Barwick was the person who

signed this grievance as the Chief Administrative Officer (either when deciding it was an

emergency or that it should be denied).   *Id.*, p. 51, 53.   The ARB received the appeal of this

grievance on May 1, 2024, and issued a decision affirming the denial on June 6, 2024.   *Id.*, p. 48.

Plaintiff submitted another emergency grievance on March 20, 2024 that contained the

following narrative:

On February 23, 2024 I sat down with the medical director Dr.
Myers to discuss my medical issues. I inquired about being issued a
double mattress permit for two reasons: (1) I arrived here at PNKCC
on Feb. 15, 2024 and I was issued a used/flat mattress; (2) I have a
spinal injury and sleeping on a flat mattress on steel causes more
pain in my lower back and to my sciatic on the left side (hip).  I
tried to explain to Dr. Myers that when I was at Menard CC in 2016-
2019 I was issued a double mattress permit because of my spinal
injury/sciatic pain (left hip) and when I left Menard CC in April of
2019 I arrived at WICC where they had springs on most of there
bunks and by me being on a[n] ADA wing at WICC I had springs
on my bunk so there was no need for me to be issued a double
mattress permit.  I continued by saying that I do not have my
menard CC medical permit right now because I was not given access
to my legal box yet.  The doctor stated "I do not issue out double
mattress permits."

The follow[ing] Monday Feb. 26, 2024 if my memory services me
right I talked to the (1) house Lt. Hiller and I explained to him what
the doctor told me about the double mattress situation and the Lt.
told me that only the doctor can issue: double mattress permit.  The
Lt. told me to get that Menard CC medical permit for double
mattress and go back to him and see what he say.

On March 4, 2024 I was called to personal property and I had
retrieved that medical permit for a double mattress from Menard
CC. On March 7, 2024 I was issued a pass to go to the clothing room
for hygiene items and I had asked the clothing room supervisor
about the double mattress and he told me that only the doctor
issue/authorize that.

On March 11, 2024 I was called to give sick call in (1) house and
the nurse told me that the medical director Dr. Myers can give me a
double mattress medical permit if he want to.  I showed the nurse
my double mattress medical permit from Menard CC and I
explained to the nurse why I was not issued a medical permit for
double mattress at WICC because they had springs on most of their
bunks. I also asked the nurse to let the doctor know that I need my
Tramadol back because I do not understand WHY he discontinued
it.

Friday, March 15, 2024 I sat down with Dr. Myers and I tried to
show him my double mattress permit from Menard CC.   The doctor
got lived saying "I DO NOT WANT TO SEE NOTHING YOU
HAVE." He continued by saying "I told you once I am not giving

you a double mattress permit." Then I tried to ask him WHY did you
discontinue my pain medication Tramadol for my chronic pain
(spinal injury).  He told me that I was only there to discuss the
double mattress.  He did not want to hear nothing I had to say.
Maybe he was feeling some kind of way toward me because of the
emergency grievance I filed on him dated March 7, 2024 #K59-
0324815 that was deemed as an emergency by the CAO (ADA
transportation).

I did not request for a transfer I was forced out of WICC for my
safety due to a rogue Sergeant there and the social network/family
affairs community/brotherhood members of WICC that was out to
harm me because I exercised my first amendment rights by filing
grievances "Freedom of Speech." The rogue WICC employee
accused me of assault among other bogus charges and the video
footage proved that the rogue employees lied on me and everybody
that was involved adjudicating the lie were just as guilty.   The head
of I.A. in Springfield moved me for my safety because WICC is
known for inmates' deaths.

I am not here to fight with nobody, I am just requesting fair
treatment.  See medical permit from Menard CC Double mattress
and medical documents concerning my spinal injury.

*Id.*, pp. 55-56.   The Chief Administrative Officer (identity unclear) determined it was an

emergency on March 22, 2024.   *Id.*, p. 55.   It appears that this grievance was considered as the

same time as the March 7, 2024 grievance.   *Id.*, p. 52.   These grievances are collectively referred

to as the "March 2024 grievances" throughout the remainder of this Order.

## Discussion

While Plaintiff's March 2024 grievances discuss at length the allegations he makes against

Dr. Myers in this case, no mention is made of Defendant Barwick and his alleged refusal to

intervene regarding Plaintiff's ADA accommodations and medical treatment.   To the extent that

Plaintiff alleges in Count I that Defendant Barwick was deliberately indifferent because he

reviewed Plaintiff's grievances and did not intervene, Defendant Barwick's review of those

grievances did not alert prison officials to the allegations that Plaintiff makes against him in this

suit.   To the extent that Defendant Barwick's Count I liability is based on his review of Plaintiff's

letters, Plaintiff did not write him until April 18, 2024 so the March 2024 grievances could not

have alerted prison officials to the allegations against Defendant Barwick.

In response to Defendant's Motion for Summary Judgment, Plaintiff simply argues the

merits of his case: that Defendant Barwick ignored the denial of Plaintiff's ADA rights. Plaintiff

also submitted grievance records for the Court's consideration, namely, a grievance dated April 3,

2024 and one December 2, 2024.   Doc. 68, pp. 13-24.   Plaintiff mentions Defendant Barwick in

the December 2, 2024 grievance (Doc. 68, p. 13) but it was submitted five months after Plaintiff

filed suit and the PLRA does not permit a "sue first, exhaust later" approach.   *Chambers v. Sood*,

956 F.3d 979, 984 (7th Cir. 2020).   Plaintiff's ARB records reflect that he fully exhausted multiple

grievances in 2024 regarding the allegations in this lawsuit, but the only grievances that were fully

exhausted before July 2, 2024 (the date he filed this lawsuit) are the March 2024 grievances.

The Court acknowledges that Plaintiff filed a Motion for Temporary Restraining Order on

July 2, 2024 and did not file a Complaint until August 8, 2024.    His ARB records reflect that he

fully exhausted one grievance between after July 2, 2024 and August 8, 2024.   Doc. 64-1, pp. 44-

47.   Plaintiff does not mention Defendant Barwick in that grievance.   *See id*.   Moreover, the

PLRA does not make any distinction between first filing a Motion for Temporary Restraining

Order or a Complaint.   42 U.S.C. § 1997e(a) ("no actions shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in

any..prison…until such administrative remedies as are available are exhausted."   Because

Plaintiff failed to identify Defendant Barwick (or conduct attributed to Defendant Barwick) in a

grievance that was fully exhausted before July 2, 2024, Defendant's Motion (Doc. 64) is

GRANTED.

## Conclusion

Summary judgment is granted in favor of Defendant Barwick and against Plaintiff on Count I of Plaintiff's Complaint.    Count I against Defendant Barwick is dismissed without prejudice.    The Clerk of Court is directed to enter judgment accordingly at the close of the case.

This case proceeds on the following claims:

|            |                                                                                                                                                                                                         |
|------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| Count 1:   | Eighth Amendment claim against Dr. Myers for cancelling Plaintiff's longstanding pain medication, a wheelchair, ADA van with wheelchair, ADA showers, double mattress, and single-man cell status at Pinckneyville. |
| Count 2:   | ADA and/or Rehab Act claims against IDOC and Warden Barwick in his official capacity for failing to accommodate Plaintiff's disabilities by denying him a wheelchair, ADA ADA van with wheelchair, ADA showers, and single man cell status at Pinckneyville. |

**IT IS SO ORDERED.**

**DATED:   July 22, 2025**


s/ *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**